UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BURTON KENNETH LANDMAN, | 5:15-CV-05091-KES |
| Petitioner, | |
| | REPORT AND RECOMMENDATION |
| vs. | |
| ROBERT DOOLEY, CHIEF WARDEN; AND THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, | |
| Respondents. | |

**INTRODUCTION**

Petitioner, Burton Kenneth Landman, an inmate at the Mike Durfee State Prison in Springfield, South Dakota, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents have moved to dismiss Mr. Landman's petition. Docket 5. Mr. Landman has moved for summary judgment. Docket 11.

The court has received for review pertinent portions of the state court files, including both the criminal and state habeas records. The matter has been fully briefed and is now ripe for a decision.

Mr. Landman was convicted in Pennington County, South Dakota, and is currently incarcerated pursuant to a judgment of a South Dakota state court. These proceedings were referred to this magistrate judge pursuant to 28 U.S.C. § 636(b) and the October 16, 2014, standing order of the Honorable Karen E.

Schreier.  The pending matter is therefore properly before this court pursuant to 28 U.S.C. § 2254.

## FACTS AND PROCEDURAL HISTORY

The court has taken judicial notice of the files from Mr. Landman's underlying criminal conviction, <u>State v. Landman</u>, CR 95-5632 (Seventh Judicial Circuit, Pennington County, South Dakota); and his state habeas proceedings (<u>Landman v. Weber</u>, CV 00-28, Seventh  Judicial Circuit, Pennington County, South Dakota).[1]  <u>See</u>, <u>Hood v. United States</u>, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); <u>Matter of  Phillips</u>, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); <u>Green v. White</u>, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings).  Mr. Landman's post-conviction procedural history is unusual and is set forth below.  Other pertinent facts will be described as necessary in the analysis section.

## A.    Conviction.

The facts which led to Mr. Landman's conviction are gleaned from the state court records.  They are as follows:

In November, 1996, the State filed an information in Pennington County, South Dakota, charging Mr. Landman with five counts of first-degree rape in violation of SDCL § 22-22-1(4) (class 2 felonies) and three counts of third-degree

---

[1] Unless otherwise noted, references to docketed items in the record will be to this court's docket number in CV 15-5091, United States District Court, District of South Dakota.  References to the docketed items from Mr. Landman's state court proceedings will be by "Pennington County" followed by the appropriate criminal or civil numerical designation.

rape in violation of SDCL § 22-22-1(5) (class 3 felonies).  The dates of the alleged acts spanned from 1986 through 1993.  See Docket 6-1.

In May, 1997, the State filed an amended information which charged Mr. Landman with five counts of sexual contact with a minor in violation of SDCL § 22-22-7 (class 3 felonies).  The dates of the alleged acts spanned from 1990-1992.  Docket 6-2.

On May 9, 1997, Mr. Landman pleaded guilty to all of the charges in the amended information (five counts of sexual contact with a minor).  Docket 6-3.  On June 16, 1997, the Honorable Thomas Trimble, state circuit court judge, sentenced Mr. Landman.  Mr. Landman and his counsel spoke at the sentencing hearing on Mr. Landman's behalf.  ST at 1-7, 20.  The court acknowledged the receipt of several letters and Mr. Landman's Presentence Investigation (PSI) evaluation.  The court also heard a letter read aloud from Mr. Landman's former sister-in-law.  ST at pp. 9-15.  Judge Trimble sentenced Mr. Landman to fifteen years' imprisonment for each of the five counts, with the sentences to run consecutively, for a total of seventy-five years in prison.  Mr. Landman received credit for time served.  Mr. Landman was also ordered to pay costs and restitution. See Docket 6-3.

**B.      Direct Appeal.**

Mr. Landman did not file a direct appeal.

**C.      Motion for Sentence Reduction.**

On May 1 and then again on May 4, 1998, Mr. Landman wrote to Judge Trimble asking that his sentences be modified to run concurrently instead of

consecutively.[2]   See Docket Nos. 54 and 55 in Pennington County CR 95-5632.

On May 13, 1998, Judge Trimble denied Mr. Landman's motion for sentence

modification.  Id., Docket No. 56.

**D.    First State Habeas Corpus Petition.**

On January 5, 2000, Mr. Landman filed a *pro se* state habeas petition.

Docket 6-4, 6-5, 6-6.[3]  Mr. Landman raised three grounds for relief in this petition.

They were as follows:

First ground for relief:  Violation of the South Dakota Speedy Trial Act.

Second ground for relief:  Sentence imposed violated the Eighth Amendment prohibition against cruel and unusual punishment.

_____

[2] SDCL § 23A-27-4.1 allows the judge who entered the judgment to, in the interests of justice, vacate it and enter a new judgment.  The statute states:

Within a reasonable time but not more than one year after final judgment, a court on motion of a defendant or upon its own motion may relieve a defendant from final judgment if required in the interests of justice.  If the original trial was by a court without a jury, the court on motion of a defendant or upon its own motion, may vacate the judgment if entered, order a new trial or take additional testimony and direct entry of a new judgment.

A motion under this section does not affect the finality of a judgment or suspend its operation.

If an appeal is pending, the court may grant a motion under this section only upon remand of the case.

See SDCL § 23A-27-4.1.

[3] The state habeas petition which has been provided to the court is file-stamped by the Pennington County Clerk of Courts with a date of January 7, 1999.  See Docket 6-4.  The parties appear to agree, however, that this date is a mistake and should be January 7, 2000.  This is because the petition is signed by Mr. Landman on January 5, 2000, and Mr. Landman asserts in this, his § 2254 petition that his first state habeas petition was filed in 2000.  See Docket 1, p. 1.

Third ground for relief:    Ineffective assistance of counsel by (a) failure to properly address irregularities in presentence investigation;  and (b) failure to adequately explain options regarding presentence investigation including whether petitioner could secure another mental evaluation or withdraw his guilty plea prior to sentencing.

Thereafter, the Honorable Merton Tice, state circuit court judge, appointed Black Hills Legal Services/Pennington County Public Advocacy to represent Mr. Landman regarding his state habeas claims.  See Pennington County CV 00-28, Docket No. 5.  Black Hills Legal Services later moved to withdraw, however, because of a conflict of interest.  Id., Docket 6.  Judge Tice then appointed private counsel to represent Mr. Landman.  Id. Docket 7.  Mr. Landman's state habeas remained pending for several years until, upon advice of his appointed counsel, he dismissed it without prejudice.  See Pennington County CV 00-28, Docket 16; Docket 6-9 in this case.   Judge Tice entered an order dismissing Mr. Landman's first state habeas case without prejudice on July 18, 2006.  See Pennington County CV 00-28, Docket 17; Docket 6-8 in this case.

**E.      Second State Habeas Case.**

Mr. Landman filed a second *pro se* state habeas petition on or about June 19, 2012.  See Docket 11-9 in this case, Docket  74 in Pennington County CR 95-5632.  Mr. Landman raised the following claims in that state habeas action:

First ground for relief:  Ineffective assistance of first state habeas counsel.  Prior habeas counsel gave flawed advice by telling petitioner that challenging his guilty plea would require him to withdraw the plea and face all original charges as a result.

Second ground for relief:  Ineffective assistance of trial counsel by: (a) failure to investigate; (b) standing by while court violates due process; (c) failure to relay petitioner's actual plea offer;

5

(c) standing by as court and the state violate due process at pleading; (d) failure to remedy witness intimidation by prosecutor; (e) failure to stay at PSI interview and convey recounted info at sentencing; and (f) failure to file a timely requested notice of appeal.

Third ground for relief:  Constitutional deprivations by the trial court:  (a) judge told petitioner during an *in camera* meeting that if he did not agree to a continuance he would dismiss charges and re-charge him "until he was an old man," and (b) trial court violated <u>Boykin v. Alabama</u>, 395 U.S. 238  (1969) during change of plea hearing, rendering plea unknowing and involuntary.

<u>See</u> <u>generally</u>, Docket No. 74 (with attachments) in Pennington County CR 95-5632.  On June 27, 2012, the Honorable Jeff Davis dismissed Mr. Landman's second state habeas with prejudice and on the merits because it was untimely pursuant to SDCL § 21-27.3.2.  Docket 72, Pennington County CR 95-5632.  Judge Davis likewise denied a certificate of probable cause.  <u>Id.</u>

Mr. Landman moved the South Dakota Supreme Court for a certificate of probable cause.  Docket 11-9 & 11-10.  On August 13, 2012, the South Dakota Supreme Court returned Mr. Landman's motion as improper and untimely filed.  Docket 11-12.

## F.    Other State Proceedings.

### 1.    First Motion to Vacate/Reimpose Sentence.

On February 6, 2015, Mr. Landman filed a "motion to vacate judgment and reimpose same judgment."   Docket 6-11.  In that proceeding, Mr. Landman requested the state circuit court judge to "revive his long-expired right to appeal" his conviction.  <u>Id.</u>, p. 2.  On February 23, 2015, however, Judge Davis denied Mr. Landman's motion via letter decision.  Docket 6-12.  On March 2, 2015,

Mr. Landman wrote to the Pennington County Clerk of Courts, indicating his intent to appeal Judge Davis's decision.  Docket 6-13.  On March 5, 2015, Judge Davis responded to Mr. Landman, indicating there "is no right to appeal from a Motion to Vacate," and that because more than 30 days had elapsed since Mr. Landman's original judgment of conviction, his statutory right to appeal the judgment had lapsed long ago.  Docket 6-14.

Next, on March 31, 2015, Mr. Landman filed a "motion for certificate of probable cause and appointment of counsel" regarding Judge Davis's rejection of what Mr. Landman then referred to as his "de facto" habeas corpus cause of action.  Docket 6-15.   On April 8, 2015, Judge Davis again responded to Mr. Landman, informing him there is no right to a certificate of probable cause for the denial of a "motion to vacate."  Docket 6-16.  Mr. Landman attempted to file a motion for certificate of probable cause with the South Dakota Supreme Court regarding Judge Davis's denial of the motion to vacate but the documents were returned to him unfiled because they did not refer to a habeas corpus action pursuant to SDCL § 21-27-18.1.   See Docket 11-27.

### 2.    Second Motion to Vacate/Reimpose Sentence.

On July 10, 2015, Mr. Landman filed a second motion to vacate/reimpose sentence.  This time, Mr. Landman cited SDCL § 23A-27-51, which provides:

> If the court finds that an applicant was denied the right to an
> appeal from an original conviction in violation of the Constitution
> of the United States or the Constitution of South Dakota, the court
> shall issue a new judgment and impose the same sentence if such
> relief is requested within a reasonable time and an adequate record
> of the original trial proceedings is available for review.  The court
> shall advise the applicant of the following:

7

    (1) The rights associated with an appeal from a criminal
        conviction; and
    (2) The time for filing a notice of appeal from the reimposed
        judgment and sentence.  Nothing in this section limits an
        applicant's right to habeas corpus.

SDCL § 23A-27-51.  See Docket 6-17.  On March 5, 2015, the Honorable Craig

Pfeifle denied Mr. Landman's motion via letter decision.  See Docket 6-18.  On

July 27, 2015, Mr. Landman attempted to appeal Judge Pfeifle's decision

(Docket 11-29), but on July 31, 2015, Judge Pfeifle responded by letter to

Mr. Landman, informing Mr. Landman "there is no statutory right to appeal

from a motion to reimpose sentence."  Docket 6-20.

### 3.    Application for Writ of Mandamus.

By August 2015, the state circuit court had denied both of

Mr. Landman's motions to vacate/reimpose sentence, and informed him either

(1) there was no mechanism in place to appeal from the denial; (2) and/or he

could not move for a certificate of probable cause from the denial.

On August 24, 2015, Mr. Landman petitioned the South Dakota

Supreme Court for a writ of mandamus.  The relief requested by Mr. Landman

via the petition for writ of mandamus was for the South Dakota Supreme Court

to compel the Seventh Judicial Circuit to process Mr. Landman's appeal on the

motion(s) to vacate/reimpose his sentence.  See Docket 11-30.  On September

25, 2015, the South Dakota Supreme Court summarily denied Mr. Landman's

petition for writ of mandamus.  Docket 6-21.

**G.     First Federal § 2254 Habeas Corpus Petition.**

Mr. Landman filed his first federal habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 10, 2005.  See CV 05-4063 (United States District Court, District of South Dakota).  This first federal § 2254 petition was filed during the pendency of Mr. Landman's first state habeas petition.  Id.  Mr. Landman moved to withdraw his first federal petition two weeks after he filed it.  Id.; Docket 6.  On May 25, 2005, Judge Schreier dismissed the petition without prejudice.

**H.     Second Federal § 2254 Habeas Corpus Petition.**

On December 28, 2015, On Mr. Landman filed this, his second federal habeas corpus petition pursuant to 28 U.S.C. § 2254.  Mr. Landman asserts the purpose of this petition is not to challenge his underlying criminal judgment. Docket 1, p. 2.  Instead, he purports to challenge the "7/17/2015 order of the 7th Judicial Circuit denying petitioner's 7/10/2015 motion to reimpose judgment; due to court's violating federal law and due process clause of the U.S. Constitution." See Docket 1, p. 2.

**DISCUSSION**

**A.     Principles Generally Applicable to § 2254 Petitions.**

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of  the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Such petitions are governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  Under AEDPA, federal courts may exercise only a "limited and deferential review of underlying state

court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005).
A federal court may not grant a writ of habeas corpus unless the state court's
adjudication of a claim "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law."  28 U.S.C.
§ 2254(d)(1).  A state court decision is "contrary to" clearly established federal
law if it "applies a rule that contradicts the governing law set forth in Supreme
Court cases or if it confronts a set of facts that are materially indistinguishable
from a decision of the Court and nevertheless arrives at a result different from
the Court's precedent." Williams v. Taylor, 529 U.S. 362, 405-06, (2000).
A federal habeas court may not issue the writ merely because it concludes the
state court applied the clearly established federal law erroneously or
incorrectly.  Id. at 411. "Rather, that application must also be *unreasonable*."
Id. (emphasis added).

The state court's factual findings are presumed to be correct, and a
federal habeas court may not disregard the presumption unless specific
statutory exceptions are met.  Thatsaphone v. Weber, 137 F.3d 1041, 1045
(8th Cir. 1998); 28 U.S.C. § 2254(e).  A federal habeas court "may not simply
disagree with the state court's factual determinations.   Instead it must
conclude that the state court's findings lacked even fair support in the record."
Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

10

**B.      Application of AEDPA Statute of Limitations to Mr. Landman's Case.**

AEDPA contains a one-year statute of limitations.   Specifically, 28

U.S.C. § 2244(d) provides in relevant part:

> **(d)      (1)** A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
>> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> **(B)** the date on which the impediment to filing an application created by State action in violation the Constitution or laws of the United States is removed, if the applicant  was prevented from filing by such State action;
>> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)**   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See 28 U.S.C. § 2244(d)(1) and (2).

A judgment or state conviction is final, for purposes of commencing the

statute of limitation period, at "(1) either the conclusion of all direct criminal

appeals in the state system, followed by either the completion or denial of

certiorari proceedings before the United States Supreme Court; or (2) if

certiorari was not sought, then by the conclusion of all direct criminal appeals

in the state system followed by the expiration of the time allotted for filing a

11

petition for the writ." Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time allotted for filing a petition for writ of certiorari with the Supreme Court is ninety days. Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001).

The statute of limitation for § 2254 petitions is subject to statutory tolling. See 28 U.S.C. § 2244(d)(2). This one-year statute of limitation period is tolled, or does not include, the time during which a properly filed application for state post-conviction relief or other collateral review is pending in state court. Faulks v. Weber, 459 F.3d 871, 873 (8th Cir. 2006); 28 U.S.C. § 2244(d)(2). The phrase "post-conviction or other collateral review" in § 2254's statutory tolling provision encompasses the "diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." Duncan v. Walker, 533 U.S. 167, 177 (2001). Thus, § 2254's tolling provision "applies to all types of state collateral review available after a conviction." Id.

State collateral or post-conviction proceedings "are 'pending' for the period between the trial court's denial of the [post-conviction relief] and the timely filing of an appeal from it." Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005) (citing Peterson v. Gammon, 200 F.3d 1202, 1203 (8th Cir. 2000)); see also Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (an application for state post-conviction review is pending until a mandate is issued).

However, state proceedings are not pending for the ninety-day period "following the final denial of state post-conviction relief, the period during

12

which an unsuccessful state court petitioner may seek a writ of certiorari from the United States Supreme Court." <u>Jihad</u>, 267 F.3d at 805.  Additionally, "[s]tate proceedings are not pending during the time between the end of direct review and the date an application for state [post-conviction relief] is filed." <u>Maghee</u>, 410 F.3d at 475 (<u>citing</u> <u>Painter v. Iowa</u>, 247 F.3d 1255, 1256 (8th Cir. 2001)).  And, "[t]he one year AEDPA limit for federal habeas filing cannot be tolled after it has expired." <u>Jackson v. Ault</u>, 452 F.3d 734, 735 (8th Cir. 2006). In short, the one-year statute of limitations begins to run after the state conviction is final, is tolled while state habeas proceedings are pending, and then begins running again when state habeas proceedings become final. <u>Curtiss v. Mount Pleasant Corr. Facility</u>, 338 F.3d 851, 853 (8th Cir. 2003).

Applying these principles to Mr. Landman's case, the following calculations apply:

Judgment of conviction filed in state court:    **June 18, 1997**

Time for appeal pursuant to SDCL § 23A-32-15:  30 days

(No appeal filed)

Conviction becomes final:    **July 18, 1997**

July 18, 1997, therefore, is the date the AEDPA statute of limitations "clock" began to tick.   See <u>Gonzalez v. Thaler</u>, 132 S. Ct. 641, 653 (2012) (if petitioner does not appeal to the State's highest court, judgment becomes final when the time for pursuing direct review in state court expires).   Absent tolling, the AEDPA statute of limitations would expire one year later, on July 18, 1998.

13

Inside that time frame, however, on May 1, 1998, Mr. Landman moved the state court for a sentence modification. Judge Trimble denied the motion on May 13, 1998. The thirteen days during the pendency of this motion tolled the AEDPA statute of limitations pursuant to 28 U.S.C. § 2244(d)(2).

To summarize: Mr. Landman's AEDPA statute of limitations began to run on July 18, 1997 and ran for 288 days or nine months and 14 days until Mr. Landman filed his motion for sentence modification. The AEDPA statute of limitations was tolled between May1-May 13, 1998, then began to run again, with 77 days left. Absent statutory or equitable tolling, the AEDPA statute of limitations expired on July 30, 1998.

### 1. The Effect of Mr. Landman's Unsuccessful Motion(s) for Untimely Direct Appeal of His Conviction.

In Jimenez v. Quarterman, 555 U.S. 113 (2009), the United States Supreme Court explained that if a criminal defendant *successfully* petitions the state court to untimely reopen direct review of his conviction, that conviction is no longer "final" for purposes of 28 U.S.C. § 2244(d)(1)(A). Id. at 120. "Rather, the order granting an out of time appeal restored the pendency of the direct appeal, and petitioner's conviction was again capable of modification through direct appeal to the state courts and to this Court on certiorari review." Id. (citation omitted, punctuation altered).

The Jimenez Court cautioned, however, that its holding was narrow:

> We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas

14

> relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A).
> In such a case, "the date on which the judgment became final by
> the conclusion of direct review or the expiration of the time for
> seeking such review" must reflect the conclusion of the out-of-time
> direct appeal, or the expiration of the time for seeking review of
> that appeal.  . . .

Id. at 121. In a footnote, the Court expressly disclaimed that it was deciding

whether, had Mr. Jimenez sought federal habeas relief between the time his

federal habeas one-year statute of limitations initially expired and the time the

state court ordered his direct review be reopened out of time, such a petition

could have been deemed timely.  Jimenez, 555 U.S. at 120, n.4.  "Were such a

petition timely though, it would not be through the application of §2244(d)(1)(A)

because we have previously held that the *possibility* that a state court may

reopen direct review 'does not render convictions and sentences that are no

longer subject to direct review nonfinal.' " Id. (citing Beard v. Banks, 542 U.S.

406, 412 (2004)).

   In Searcy v. Carter, 246 F.3d 515 (6th Cir. 2001) the § 2254 petitioner

was convicted of robbery in Ohio.  Id. at 516.  He appealed his conviction, but

did not file a timely petition for review to the Ohio Supreme Court.  Id.  Three

years later, he filed a motion for a delayed appeal to the Ohio Supreme Court,

which was denied.  Id.  Next, he filed a § 2254 petition, which was denied by

the district court as untimely.   Mr. Searcy asserted his motion for a delayed

appeal to the Ohio Supreme Court "reset" his § 2254 statute of limitations.  Id.

   The State asserted that at best, the pendency of Mr. Searcy's motion for a

delayed appeal tolled the running of the AEDPA statute of limitations, but the

state court's denial of the motion did not reset or "retrigger" it. Id. at 518. The

Sixth Circuit agreed. Id. at 519.

> This is a position that we cannot endorse, because it would
> effectively eviscerate the AEDPA's statute of limitations. Leave to
> file a late notice of appeal can be sought at any time, even many
> years after conviction. If the one-year period of limitations did not
> begin to run until such an application for leave to appeal was
> denied, the one-year statute of limitations would be meaningless;
> merely by delaying his application for leave to file a late notice of
> appeal, a petitioner could indefinitely extend the time for seeking
> habeas relief. The statute of limitations provision of the AEDPA
> would thus effectively be eliminated, a clearly unacceptable result.

Id. (quoting Raynor v. Dufrain, 28 F. Supp. 2d 896 (S.D.N.Y. 1998)).

The Ninth Circuit reached the same result in Randle v. Crawford, 604

F.3d 1047 (9th Cir. 2010). Mr. Randle was convicted in Nevada and sentenced

to four consecutive life sentences. Id. at 1050. He failed to file a timely appeal.

Id. Eventually, new counsel filed a motion for leave to file an untimely appeal.

Id. The Nevada Supreme Court denied the motion. Id. When Mr. Randle's

§ 2254 habeas petition was dismissed as untimely, he argued the AEDPA

statute of limitations did not begin to run until after the Nevada Supreme

Court denied his motion for an untimely appeal. Id. at 1054. The Ninth

Circuit rejected this notion, however, stating the denial of the motion for an

untimely appeal did not constitute the "conclusion of direct review" pursuant to

28 U.S.C. § 2244(d)(1)(A). Id. "If the one-year statute of limitations were made

contingent on the resolution of a petitioner's attempt to file an untimely notice

of appeal, a petitioner could indefinitely delay the commencement of the one-

year period by simply waiting to file such notice until after the normal

16

expiration date.  Such procedure would undermine the statute of limitations for federal habeas petitions." Id.

Several years after Searcy, the Sixth Circuit revisited the issue and found the denial of a motion to file an untimely appeal has no effect upon the AEDPA limitation period *which has already expired.* Keeling v. Warden, Lebanon Corr. Institution, 673 F.3d 452 (6th Cir. 2012).  In that case, the petitioner (Mr. Keeling) was convicted of aggravated robbery and assault. Id. at 455.  He failed to timely appeal his conviction to the Ohio Supreme Court and his conviction became "final" for purposes of AEDPA. Id.   Nearly six years later, he filed  a motion for an out-of-time appeal with the Ohio Supreme Court. Id. The Ohio Supreme Court denied the motion and dismissed it without opinion. Id. Mr. Keeling's state habeas efforts were likewise unsuccessful. Id. at 455-56.

In 2008, Mr. Keeling sought federal habeas relief in a § 2254 petition. Id. at p. 456.  The Sixth Circuit held the petition was untimely, and that Mr. Keeling's motion for an untimely direct appeal had no effect on the AEDPA statute of limitations, which had, by the time Mr. Keeling filed his § 2254 petition, already expired. Id. at p. 460.

Similarly, in O'Neal v. Kenny, 579 F.3d 915 (8th Cir. 2009), the Eighth Circuit held that even when the state court *grants* a petitioner's motion for an untimely direct appeal, this does not breathe new life into a federal § 2254 petition which has already been filed and deemed time-barred under the

17

AEDPA, even after <u>Jimenez</u>.  <u>Id.</u> at 919.  In <u>O'Neal</u>, the petitioner pleaded no contest to state criminal charges and was sentenced in April, 1997.  <u>Id.</u> at 916. He attempted to appeal his sentence, but the appeal was dismissed for failure to submit an affidavit of indigency.  <u>Id.</u>  In August, 1997, the time for O'Neal to seek a petition for writ of certiorari with the United States Supreme Court expired.  One year later, his AEDPA one-year statute of limitations expired.  <u>Id.</u> Mr. O'Neal filed his first state habeas petition in October, 1998.  He filed his federal habeas petition pursuant to 28 U.S.C. § 2254 in April, 2001.  <u>Id.</u>  The district court initially dismissed for failure to exhaust state remedies, but certified the question of whether Mr. O'Neal's failure to exhaust should be excused because of the state court's inordinate delay in resolving his then still-pending state petition.  <u>Id.</u>  (citing <u>O'Neal v. Kenny</u>, 49 Fed. Appx. 84, 84 (8th Cir. 2002)).

The Eighth Circuit could not resolve the issue from the under-developed record, so it remanded back to the circuit court.  <u>Id.</u>  However, the circuit court dismissed the petition because the AEDPA statute of limitations had expired before Mr. O'Neal filed his state habeas petition in October, 1998.  <u>Id.</u> at 916.

Then, on April 19, 2004, the Nebraska state court *granted* Mr. O'Neal's request for post-conviction relief in the form of a new direct appeal based on his court appointed counsel's failure to properly submit an affidavit of indigency during his first direct appeal.  <u>Id.</u>  The Nebraska state courts affirmed Mr. O'Neal's conviction but his sentence was modified due to

18

legislation that had been enacted since his original sentence was imposed.  Id. In the meantime, Mr. O'Neal's § 2254 had again been dismissed by the Eighth Circuit as untimely, but the United States Supreme Court vacated and remanded in light of Jimenez.  O'Neal, 579 F.3d at 915.

On remand, the O'Neal court distinguished Jimenez because Mr. O'Neal, unlike Mr. Jimenez, sought federal habeas relief *before* the state trial court granted him a new direct appeal.  Id. at 919.  The new direct appeal, therefore, did not affect the timeliness of the federal habeas petition filed before the new direct appeal was granted.  Id.  See also, Gobert v. Province, 381 Fed. Appx. 756, (10th Cir. 2010) (filing for state court out-of-time appeal did not toll AEDPA statute of limitations because it had already expired before the out-of-time motion was filed); Lovejoy v. Warden, Louisiana State Penitentiary, 2013 WL 2319274 at *2 (W.D. La., May 9, 2013) (citing Jimenez, 555 U.S. at 113, and O'Neal, 579 F.3d at 918-19) (state court's grant of petitioner's motion for out-of-time appeal did not render his federal § 2254 petition timely, because he had already filed his § 2254 petition by the time the state court issued its ruling and his federal application deadline had already lapsed before he sought federal relief).

The application of these principles to Mr. Landman's case leads to the conclusion that barring statutory or equitable tolling, his § 2254 application is untimely.  Mr. Landman's judgment of conviction became final on July 18, 1997.  His AEDPA statute of limitations was tolled for 13 days during 1998

while he sought a sentence modification, but it expired on July 30, 1998.

Mr. Landman did not file his unsuccessful motion(s) for out-of-time direct appeal until February and July, 2015, approximately seventeen years after the AEDPA statute of limitations expired.  The state court's *denial* of these motions did not affect the finality of Mr. Landman's conviction which occurred in 1997, nor did it "retrigger" the AEDPA statute of limitations, which concluded on July 30, 1998.  Jimenez, 555 U.S. at 120, n.4; Randle, 604 F.3d at 1054; Searcy, 246 F.3d at 519.

### 2.   28 U.S.C. § 2244(d)(1)(B) & (D) and the Date the Factual Predicate of Mr. Landman's Claim was Discoverable.

Next, Mr. Landman asserts the AEDPA statute of limitations did not begin to run in his case until sometime in early 2015.  See, e.g.  Docket 1-17, p. 1 and Docket 11. p. 9.  Mr. Landman theorizes that because shortcomings in the SDSP law library prevented him from discovering the existence of McBride v. Weber, 763 N.W.2d 527 (S.D. 2009) and SDCL § 23A-27-51 until 2015, he could not have discovered his § 2254 claims until that time.

28 U.S.C. § 2244(d)(1)(B) & (D) state in relevant part:

**(d)**      **(1)** A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
> \*\*\*
>> **(B)** the date on which the impediment to filing an application created by State action in violation the Constitution or laws of the United States is removed, if the applicant  was prevented from filing by such State action;
>> \*\*\*

> **(D)** the date on which the factual predicate of the claim
> or claims presented could have been discovered
> through the exercise of due diligence.

The basis for Mr. Landman's theory is that the <u>McBride</u> case laid the foundation for his ability to move the state courts for an out-of-time appeal.  The facts of the McBride case are the following.  Mr. McBride was indicted and charged with several crimes.  <u>McBride</u>, 763 N.W.2d at 528.  He pleaded guilty to one of the charges on an "open" plea agreement, and received the maximum possible sentence.  <u>Id.</u>  After the sentencing, neither the trial judge nor Mr. McBride's counsel clearly advised him of his right to appeal his sentence.  <u>Id.</u>  Mr. McBride did not file a direct appeal, but did file a state habeas action, contending his trial counsel was ineffective for failing to consult with him about his right to file a direct appeal from the sentence imposed.  <u>Id.</u> at 529.  The South Dakota Supreme Court agreed, because it found "counsel did not inform McBride he could appeal the sentence and never asked him if he wished to appeal." <u>Id.</u> at 533.  The court found it relevant that the sentencing judge likewise did not advise Mr. McBride of his right to appeal, and that the written judgment did not contain an advisory notifying Mr. McBride of his appeal rights.  <u>Id.</u>  "Under these circumstances, and based on the information counsel knew or should have known, a duty arose to at least consult with McBride concerning his right to appeal." <u>Id.</u>

21

Justice Konenkamp wrote a special concurrence in McBride, noting that although at the time there was no statutory method in South Dakota to revive a long-expired right to appeal, "by constitutional necessity, it must exist." Id. at 534.  Justice Konenkamp observed that federal courts had long interpreted 28 U.S.C. § 2255 to allow a court to "vacate" the original sentence so it could be reimposed and a new appeal time created.  Id.  After the same sentence is vacated and the same sentence reimposed, the defendant is properly advised of his right to appeal.  Id. "By vacating and reimposing the original sentence, a new time limit to perfect an appeal is set." Id.  (citations omitted).  Justice Konenkamp suggested adopting an approach similar to the federal procedure for use when a criminal defendant had unconstitutionally been denied the right to appeal his conviction:  (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of the same sentence, the defendant should then be  advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised of the time for filing a notice of appeal from that reimposed sentence.  Id. at 535.  Finally, Justice Konenkamp noted that despite statutory authority, some South Dakota courts had in fact been employing such a remedy for years.  Id.

22

The very next year, the South Dakota legislature enacted SDCL § 23A-27-51, which codified the procedure suggested by Justice Konenkamp's concurring opinion in <u>McBride</u>.  The legislature added the requirement that the relief must be requested within a "reasonable" time and an "adequate" record of the original trial proceeding must be available for review.  <u>See</u> SDCL § 23A-27-51.

Neither Mr. Landman's delayed discovery of the <u>McBride</u> case or SDCL § 23A-27-51 excuse the late filing of this § 2254 petition.   First, the <u>McBride</u> case is distinguishable on its face from the facts of Mr. Landman's case.  Mr. Landman, unlike Mr. McBride, knew immediately after he was sentenced that he had the right to appeal his sentence.  The sentencing transcript is available for this court's review.  Unlike the judge in Mr. McBride's case, Judge Trimble advised Mr. Landman at the close of the sentencing hearing "Mr. Landman, you have got 30 days to appeal the Court's sentence."  ST at p. 22.  Mr. Landman's trial attorney, unlike Mr. McBride's trial attorney, advised Mr. Landman in writing that he had the right to appeal his sentence.  <u>See</u> Docket 6-19.  Mr. Landman claims he instructed his attorney to file the appeal, but the attorney did not do so.  That, however, is different than not *knowing* the right to appeal existed.

For this same reason, <u>DiCenzi v. Rose</u>, 452 F.3d 465 (6th Cir. 2005), upon which Mr. Landman also relies, is equally unhelpful to

Mr. Landman.  In that case, the § 2254 petitioner claimed the state courts unconstitutionally denied his motion for a delayed appeal.  Id. at 468.  Mr. Landman cites DiCenzi for the proposition that the AEDPA clock should be "reset" when the prisoner discovers his right to appeal (the "factual predicate" for his claim).  See Docket 11, p. 10.  In DiCenzi, however, Mr. DiCenzi, unlike Mr. Landman, asserted he was unaware he could file a direct appeal from his conviction.  Id. at 466.  Additionally, Mr. DiCenzi filed his § 2254 petition, claiming the Ohio Court of Appeals wrongly denied his motion for a delayed appeal, *within the ADEPA statute of limitations*, not years after it had expired as Mr. Landman has.  Id. at 469.

At the heart of Mr. Landman's claim is (1) he knew he had a right to appeal his sentence; (2) he wished to file an appeal; (3) he instructed his attorney to file an appeal; but (4) his attorney was ineffective for failing to follow his instructions.  Mr. Landman clearly knew all of these facts **in 1997**.  Even accepting as true Mr. Landman's claim that he had little or no access or the law library which would have alerted him to the McBride case and/or SDCL § 23A-27-51 regarding how to resurrect a long-expired right to appeal, therefore, he has failed to show a state-created impediment prevented him from filing his § 2254 petition within the AEDPA statute of limitations.[4]

---

[4] Additionally, the State could not impede Mr. Landman's access to the

Mr. Landman also asserts that pursuant to 28 U.S.C.
§ 2244(d)(1)(D), he could not have, with reasonable diligence, discovered
the factual predicate for his claims until 2015 when he learned of
McBride and SDCL § 23A-27-51.  This claim fails for the same reason as
does his claim under 28 U.S.C. § 2244(d)(1)(B).  The factual predicate for
Mr. Landman's claim is that he had the right to file an appeal from his
sentence, he expressed the desire to file the appeal to his attorney, but
his attorney was allegedly ineffective for failing to follow his instructions.
Mr. Landman knew all these things in 1997 and he does not claim
otherwise.  It is only the formal procedure for requesting an out-of-time
appeal that Landman did not discover until 2015.  Essentially,
Mr. Landman asserts the discovery of the formal procedure for filing an
out-of-time appeal, after having been unconstitutionally denied the right
to appeal, constitutes part of the "factual predicate" for his claim.

"The factual predicate of a petitioner's claims constitutes the vital
facts underlying those claims."  Earl v. Fabian, 556 F.3d 717, 725 (8th
Cir. 2009) (citation omitted).  In Earl, the petitioner claimed his
constitutional rights were violated because the State introduced his
confession at trial, but Mr. Earl asserted the confession should not have

---

McBride case or SDCL § 23A-27-51 until at least 2009 when McBride was
decided, or 2010 when SDCL § 23A-27-51 was enacted by the South Dakota
legislature.  But by then, Mr. Landman's AEDPA one-year statute of limitations
had long expired (on July 30, 1998).  "[T]he one year AEDPA limit for federal
habeas filing cannot be tolled after it has expired."  Jackson, 452 F.3d at 735.

been admitted because the police continued to question him after he had requested an attorney.  Id. at 720.

Mr. Earl did not timely file his § 2254 petition.  Id. at 721.  He asserted, however, that his late submission should be excused in part because the state failed to forward his case file to him in a timely fashion, preventing him from discovering the factual predicates of his claim.  Id. at 725.  The Eighth Circuit rejected this claim, noting "section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim."  Id. (citation omitted).  The court also commented that Mr. Earl was "confusing his knowledge of the factual predicate of his claim with the process of gathering evidence in support of that claim."  Id.  (citation omitted).

The same can be said in this case for Mr. Landman, except he is confusing the knowledge of the factual predicate of his claim with the process gathering evidence in support of how to pursue it.  See also, Holmes v. Spencer, 685 F.3d 51, 59 (1st Cir. 2012) (explaining the phrase "factual predicate" in  § 2244(d)(1)(D) means evidentiary facts or events and not court rulings or legal consequences of the facts); Collado v. United States, 2013 WL 3943522 at * 2 (D. Mass., July 29, 2013) (discovery of a new legal theory does not constitute a "fact" for purposes of § 2255(f)(4)); Johnson v. Gunnels, 2014 WL 5307604 at * 5 (N.D. Ga.,

26

Oct. 16, 2014) (that petitioner discovered legal arguments is simply irrelevant to when the AEDPA limitation began to run under § 2244(d)(1)(D)).  For all of these reasons, this court recommends that Mr. Landman's request for tolling under 28 U.S.C. § 2244(d)(1)(B) & (D) be denied.

### 3.    Equitable Tolling.

Finally, Mr. Landman asserts he is entitled to equitable tolling.  In Holland v. Florida, 560 U.S. 631 (2010), the Supreme Court addressed equitable tolling under AEDPA in a death penalty case.  The Court held, for the first time, in accord with all the lower circuit courts of appeal, that the statute of limitations under AEDPA could be equitably tolled.  Id. at 645.  A habeas petitioner my invoke the doctrine of equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  The Court emphasized the need for flexible rules governing the application of equitable tolling, but also noted that   " 'a garden variety claim of excusable neglect' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling."  Id. at 651-52 (citations omitted).

In Holland, the lawyer was not only unaware of the AEDPA deadline and missed it, but the petitioner also repeatedly asked the lawyer to timely file the § 2254 petition and wrote letters to the lawyer drawing his attention to the

applicable legal rules.  Id. at 636-40.  In addition, the lawyer failed to timely notify the petitioner of actions in his state case, including when the appellate court of last resort issued its decision, concluding review of petitioner's application for postconviction relief.  Id.  The petitioner assiduously attempted to keep himself informed by writing to the state court and the state clerk of courts, asking them for information about his case.  Id.  After learning in the prison law library—five weeks later—that the state supreme court had decided his appeal, the petitioner filed his § 2254 petition the very same day.  Id. Under these facts, the Holland Court held that equitable tolling was not foreclosed as a matter of law and remanded for the Eleventh Circuit to apply the principles to the case and determine if the petitioner's claim was timely.  Id. at 653-54.  The court held that the diligence required of a habeas petitioner is "reasonable diligence," not "maximum feasible diligence."  Id. at 653.

Before Holland, the lower courts had addressed equitable tolling in the context of prisoner habeas filings many times.  See e.g. Baker v. Norris, 321 F.3d 769 (8th Cir. 2003).  Neither inadequate access to legal materials, ignorance of the law, nor garden variety ineffective assistance of trial counsel qualified as such "extraordinary" circumstances which would make timely filing impossible.  Baker, 321 F.3d at 771.  Baker emphasized that "prisoners are not exempt from the principle that everyone is presumed to know the law and is subject to the law whether or not he is actually aware of the particular law of which he has run afoul.  Ignorance of the law, even for an incarcerated *pro se*

28

petitioner, generally does not excuse prompt filing." Id. (citations omitted, internal punctuation altered.)

The inability to obtain legal materials from former counsel or the court system has likewise been rejected as adequate cause by the Eighth Circuit and other courts. Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001) (petitioner's affidavit detailing unsuccessful attempts to secure assistance from public defender, state trial court judge, and state trial court counsel, and tardy receipt of trial transcript did not excuse late filing). These are not the kind of extraordinary circumstances beyond a habeas petitioner's control which entitle him to equitable tolling because "there is no constitutional right to counsel in seeking state post-conviction relief." Id. The courts have held that these pre-filing efforts are the type of obstacles "faced by many if not most habeas petitioners, and therefore Congress is presumed to have considered such equities in enacting a one-year limitations period." Id. at 107. See also Weibley v. Kaiser, 50 Fed. Appx. 399 (10th Cir. 2002) (unpublished); Clark v. State of Oklahoma, 2006 WL 62843 (W.D. Okla., Jan. 10, 2006); Lindo v. LeFever, 193 F. Supp.2d 659 (E.D.N.Y. 2002); United States v. Van Poyck, 980 F. Supp.1108 (C.D. Cal. 1997).

Equitable tolling is appropriate where the state's conduct "lulls the prisoner into inaction." Maghee, 410 F.3d at 476. See also 28 U.S.C. 2244(d)(1)B) (statute of limitations tolled during time which impediment created by state action remains, if such state action prevented prisoner from

29

filing).  The tolling doctrine should be applied in such circumstances only when some fault on the part of the state has caused the petitioner to file late. Maghee, 410 F.3d at 476.

The alleged insufficiency of the South Dakota State Penitentiary law library similarly does not automatically serve as a basis for equitable tolling. Everyone is presumed to know the law and is subject to the law, even *pro se* prisoners.  Baker, 321 F.3d at 772 (citing Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999)).  See also, Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000) (denying equitable tolling and explaining that even in the case of an unrepresented prisoner who alleged a lack of legal knowledge or legal resources, equitable tolling may not be warranted).

The Eighth Circuit has addressed equitable tolling post-Holland.  For example in Muhammad v. United States, 735 F.3d 812 (8th Cir. 2013), the petitioner claimed equitable tolling was warranted in his case after he failed to timely file his federal § 2255 motion to vacate.  Id. at 814.  The court began by noting the same rule applied to § 2254 and § 2255 petitions as it pertained to equitable tolling.  Id. at 815.  That is, equitable tolling applies only if the petitioner shows (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way.  Id.

Mr. Muhammad claimed two extraordinary circumstances:  that he had been confined in a special housing unit for his first five months of imprisonment, where he was denied access to both the law library and his own

30

personal papers; and (2) his attorney promised to file his § 2255 motion to vacate but she did not.  Id.   The court did not find either of these circumstances was extraordinary, warranting equitable tolling.  Id. at 815-16.

First, as to Mr. Muhammad's confinement in special housing and lack of access to the law library, the court noted that though he may not have had access to the law library, he did have access to pen and paper, and did have the ability to contact the court, had he wished to do so.  Id. at 815.  The court reiterated its earlier holding in Kreutzer that an unrepresented prisoner's claimed lack of access to legal resources does not constitute an "extraordinary circumstance" warranting equitable tolling.  Id.

Turning to Mr. Muhammad's claim that he relied upon his attorney's assertion that she would file the § 2255 motion for him, the court likewise did not accept this as an exceptional circumstance.  Id. at 816.  The court distinguished Holland because unlike Holland, Mr. Muhammad did not persist in his efforts to find out whether his attorney was working on the petition, and the attorney's behavior was not egregious.  Id.   The court emphasized that serious attorney misconduct, but not negligence, might warrant equitable tolling.  Id.  The court noted its own prior finding of extraordinary circumstances in a case where, among other things, the lawyer lied to his client about both the filing deadline and the status of the client's petition.     Id. (citing United States v. Martin, 408 F.3d 1089, 1095 (8th Cir. 2005)).  In contrast to Holland  and Martin, Mr. Muhammad claimed his attorney initially

31

said she would file the § 2255 motion on his behalf but then quit communicating with him.  Muhammad, 735 F.3d at 816.  That, the court concluded, did not constitute an "extraordinary circumstance" which warranted equitable tolling under Holland.  Id.

Even if the lawyer's failure to act did constitute an extraordinary circumstance, Mr. Muhammad still was not entitled to equitable tolling.  Id. This is because Mr. Muhammad failed to act with the "reasonable diligence" required by Holland.  Id.  The court reasoned that when Mr. Muhammad's lawyer did not respond to his letters or take his phone calls, it was not "reasonably diligent" for Mr. Muhammad to interpret such behavior as evidence the lawyer was working on his case.  Id. at 817.  Mr. Muhammad did not attempt to contact the court to find out whether his case was on file, nor did he, even after he learned of the one-year AEDPA deadline, immediately act to file his petition on his own until after the deadline had expired.  Id. at 817.

The Eighth Circuit also declined to apply equitable tolling post-Holland in Gordon v. Arkansas, __ F.3d __, 2016 WL 3027276 (8th Cir., May 26, 2016). Mr. Gordon's case bears some procedural similarities to Mr. Landman's.  Mr. Gordon pleaded guilty in state court of raping a minor child.  Id. at *1.  He did not directly appeal his conviction, but he did file a state habeas petition in which he claimed his guilty plea was invalid.  The state habeas petition, however, was dismissed by the Arkansas state courts as untimely.  Id.  at *2-3.

32

Mr. Gordon then sought relief in federal court through a § 2254 habeas corpus petition.  The relief he sought, however, was for the federal courts to "allow the [state habeas petition] to be presented to the courts although it was late submitted . . ." Id. at * 3.  The Eighth Circuit noted Mr. Gordon "did not attack his conviction or seek release from confinement; instead he requested that the district court order the state to permit him to proceed with the substance of his [state] petition." Id.[5]  The state moved to dismiss Mr. Gordon's petition because, among other reasons, it was untimely under AEDPA.  Id.

The district court found that neither statutory nor equitable tolling applied, and therefore dismissed Mr. Gordon's § 2254 petition.  Id. at * 4.  The Eighth Circuit granted a certificate of appealability regarding equitable tolling. Id.[6]

In Mr. Gordon's case, the AEDPA limitations period began to run 30 days after he was sentenced.  Mr. Gordon had until September 4, 2012 to file his § 2254 petition but did not file it until May 2, 2013.  Id.  So, unless equitable

---

[5] This is similar to the relief Mr. Landman requests in this case. Mr. Landman does not request review of the denial of his state habeas petition. Instead he asks this court to order the State to allow him to reset the state (and therefore the federal) habeas clock by ordering the State to allow his tardy motion to for a delayed appeal pursuant to SDCL § 23A-27-51.

[6] Mr. Gordon conceded he was not entitled to statutory tolling pursuant to 28 U.S.C. § 2244(d)(2).  See Gordon, 2016 WL 3027276 at *4, n.3.

tolling applied, his petition was time-barred.  Id.  The court acknowledged

Holland, but explained:

> "Equitable tolling  . . . asks whether federal courts may excuse a
> petitioner's failure to comply with *federal* timing rules, an inquiry
> that does not implicate a state court's interpretation of state law."
> Holland, 560 U.S. at 650 (citation omitted).  "[E]quitable tolling
> affords the otherwise time-barred petitioner an exceedingly narrow
> window of relief . . ." Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir.
> 2001) (citation omitted).  "The one year statute of limitation may be
> equitably tolled 'only if [the movant] shows "(1) that he has been
> pursuing his rights diligently, and (2) that some extraordinary
> circumstance stood in his way" and prevented timely filing.' "
> Muhammad  v. United States, 735 F.3d 812, 815 (8th Cir. 2013)
> (alteration in original) (quoting Holland, 560 U.S. at 649 (quoting
> Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005))).  "The diligence
> required for equitable tolling purposes is reasonable diligence, not
> maximum feasible diligence." Holland, 560 U.S. at 653.

> Here, the first question is whether Gordon has shown reasonable
> diligence to equitably toll the *federal timing rules* for filing his
> *federal habeas petition*—not his [state habeas petition].  See id. at
> 650.  As previously discussed, under AEDPA, the one-year statute
> of limitations period for Gordon to file his federal habeas petition
> ran from September 4, 2011, to September 4, 2012.  We conclude
> that Gordon failed to show reasonable diligence in pursuing his
> rights during this time period.

Gordon, 2016 WL 3027276 at * 5.  The court reasoned Mr. Gordon had not

been reasonably diligent because, though he was on "treatment precaution"

status[7] for three of the twelve-month federal statutory filing period, he had not

explained why he was unable to diligently pursue his federal rights during the

time he was not on treatment precaution.  Id.  "Accordingly, he cannot satisfy

---

[7] Mr. Gordon explained during his state habeas hearing that "treatment
precaution" status was a mental health status aimed to prevent him from
hurting himself or anyone else.  He further explained, however that even while
in treatment precaution, he was allowed access to pens, paper and legal forms
upon request.  Id. at * 2.

the two-prong test for equitable tolling." Id. (citing Muhammad, 735 F.3d at 815).

In Shoemate, neither the petitioner nor his trial attorney filed a timely direct appeal. Shoemate v. Norris, 390 F.3d 595, 597-98 (8th Cir. 2004). Mr. Shoemate attempted to file a state habeas action to allege his attorney was ineffective for failing to file a direct appeal, but his state habeas action was also untimely. Id. at 597. Because his state habeas action was untimely, it was not "properly filed" and did not toll any time for purposes of   28 U.S.C. § 2244(d)(2). Mr. Shoemate claimed equitable tolling should nevertheless apply. The Eighth Circuit explained, however, that  "[Mr. Shoemate's] misunderstanding of the Arkansas rules, statutes and the time period set forth do not justify equitable tolling." Id. at 598.

Equitable tolling was likewise inapplicable in the Keeling case discussed above. Keeling, 673  F.3d at 463. There, the Sixth Circuit acknowledged that "ineffective assistance of counsel and a substantial, involuntary delay in learning about the status of their appeals" may warrant equitable tolling in the appropriate circumstances. Id. at 462. Mr. Keeling claimed he was entitled to equitable tolling because his appellate counsel failed to tell him the outcome of his appeal. Id. The Sixth Circuit declined to extend equitable tolling, however, because it found Mr. Keeling did not diligently monitor the status of his own appeal, but instead "sat on his rights" for over one and one-half years. Id. at 463.

This court finds Mr. Landman is not entitled to equitable tolling. The extraordinary circumstance he cites is the turnover of the prison attorneys who delayed filing and/or misplaced his *state* habeas forms and therefore his *state* habeas papers did not get filed until January, 2000. See, e.g. Docket 1-4, p. 2; Docket 11, p. 2, Docket 6-9, p. 15. Mr. Landman has provided copies of letters from the prison attorney, acknowledging Mr. Landman's state habeas forms, asking for more information, and then advising about the filing of his state habeas. See Docket 11-1 through 11-6. The first of these letters is dated August 5, 1998, a few weeks *after* the AEDPA statute of limitations expired on July 30, 1998. This letter acknowledges Mr. Landman's request for assistance on his state habeas petition, and the attorney's responding letter indicates a form is enclosed for Mr. Landman to complete. Id.

These are precisely the circumstances under which the Eighth Circuit instructed equitable tolling was not warranted in Jihad, 267 F.3d at 806. There, the petitioner asserted he was entitled to equitable tolling because he had been diligently pursuing his state post-conviction remedies during the pendency of the AEDPA one-year statute of limitations. Id. The court rejected Mr. Jihad's unsuccessful attempts to find counsel to assist him in preparing his state habeas petition, and his contacts to the state court trial judge and clerk for assistance as "extraordinary circumstances" beyond Mr. Jihad's control which entitled him to equitable tolling. Id.

Similarly, Mr. Landman has shown no extraordinary circumstances beyond his control which precluded him from commencing post-conviction proceedings.  In fact, Mr. Landman did commence post-conviction proceedings on his own (his motion for sentence reduction) which resulted in statutory tolling for a period of thirteen days from May 1-13, 1998.

Mr. Landman has likewise not shown reasonable diligence.  He explains he received a letter from his trial attorney while in the prison intake area, acknowledging his desire to appeal but strongly advising against it.  Thereafter, his direct appeal time expired, and no direct appeal was ever successfully filed, despite Mr. Landman's assertion that he instructed his attorney to do so.  See Docket 1-4, p. 1.  Though Mr. Landman asserts his state habeas petition was, between 1997 and 2000, "lost, misplaced, and misfiled" (see Docket 1-4, p. 2) by the prison and the court, Mr. Landman's own exhibits 11-1 through 11-6 belie this claim.  Instead, it appears Mr. Landman chose to first request a sentence reduction (Docket 55 in Pennington County CR 95-5632) and when that was denied by Judge Trimble in May, 1998 (Docket 56 in Pennington County CR 95-5632), Mr. Landman contacted the prison attorney to begin his state habeas proceedings in August, 1998.  Docket 11-1.  By that time his AEDPA statute of limitations had already expired.  Mr. Landman could have aggressively pursued his state habeas remedies during the relevant one-year time frame, just as he pursued his sentence modification. Similarly,

Mr. Landman has not shown he ever inquired about filing a state habeas petition until August, 1998, a month *after* his AEDPA deadline had passed, and then, he did not inquire about the pendency of the state habeas until sometime in 2000, two years *after* his AEDPA deadline had passed. Mr. Landman has not, therefore, shown he was "reasonably diligent," warranting equitable tolling.   <u>Muhammad,</u> 735 F.3d at 817.

## C.   28 U.S.C. § 2254 Provides A Remedy for State Court's Unreasonable Application of Clearly Established *Federal* Law.

In his § 2254 petition, Mr. Landman asserts he wishes only to challenge the "7/17/2015 order of 7th Judicial Circuit denying Petitioner's 7/10/2015 Motion to Reimpose Judgment; Due to Court's Violating Federal Law and Due Process Clause of the U.S. Constitution."  See Docket 1, p. 2.  In his attached "preliminary statement," Mr. Landman explains he believes the state circuit court incorrectly denied his motion pursuant to SDCL § 23A-27-51, then improperly denied his right to appeal to the South Dakota Supreme Court and/or that the South Dakota Supreme Court improperly denied his appeal on the merits when it denied his writ of mandamus.  See Docket 1-3, p. 2.

Mr. Landman has not, however, cited a United States Supreme Court case or a federal statute which specifies what process is due when filing a motion for an out-of-time direct appeal under state law such as the one he filed pursuant to SDCL § 23A-27-51. "[F]ederal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Evenstad v.</u>

38

Carlson, 470 F.3d 777, 783 (8th Cir. 2006) (quoting Estelle v. McGuire, 502

U.S. 62, 67-68 (1991)).  In Evenstad, the court explained:

> In conducting habeas review, a federal court is limited to deciding whether decisions by the [state] courts were "contrary to, or involved an unreasonable application of, clearly established *Federal law*, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (emphasis added).  The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions" and has cautioned that § 2254(d)(1) "restricts the source of clearly established law to this Court's jurisprudence."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  Therefore, it is not enough for Evenstad to argue [the state court] misapplied state law.  To obtain habeas relief, Evenstad must be able to point to the Supreme Court precedent he thinks the [state courts] acted contrary to or applied unreasonably.

Evenstad, 470 F.3d at 782-83.   See also Gobert v. Province, 381 Fed. Appx.

756 (10th Cir. 2010).  In Gobert, the petitioner, like Mr. Landman, pleaded

guilty but did not file a timely direct appeal.  The AEDPA statute of limitations

expired, then Mr. Gobert filed a state motion to file an out-of-time direct

appeal.  Id. at 757.  When Mr. Gobert filed his § 2254 petition, it was dismissed

as untimely.  Id.  Mr. Gobert, like Mr. Landman, asked the federal court to rule

directly on the merits of the state court's refusal to allow him to file an

untimely direct appeal.  Id. at 757 n.1.  The Tenth Circuit declined this

invitation, however, because like Mr. Landman, Mr. Gobert did not "indicat[e]

how the denial violates his constitutional rights or federal rights, which is a

prerequisite to any claim pursued in a § 2254 petition.  See § 2254(a)."  Id.

The Jimenez case, examined in section B.1 above, instructs that when

the state court *grants* a motion for an out-of-time direct appeal, the petitioner's

conviction is not yet final for purposes of 28 U.S.C. § 2244(d)(1)(A).  Jimenez does not, however, give instruction about when or how a state court must grant such a motion.  Jimenez specifically disclaimed its intent to comment about how a petitioner in the situation Mr. Landman finds himself could go about rendering his § 2254 petition timely.  Jimenez, 555 U.S. at 120, n.4.

To the extent the Supreme Court has commented about what is a "reasonable" delay for purposes of tolling the AEDPA statute of limitations, the Court instructed in Carey v. Saffold, 536 U.S. 214 (2002) that if the state court finds the delay is unreasonable, then "that would be then the end of the matter."  Id. at 226.  In Evans v. Chavis, 546 U.S. 189 (2006), however, the Supreme Court explained that even if the state court decision is unclear about why the state habeas petition was dismissed, "the federal court must decide whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what [the State] would consider a 'reasonable time.' " Id. at 198.

In Evans, the Court found as a matter of law that a state habeas petitioner's unjustified and unexplained delay of six months during the interval between the lower court's denial of his petition and his filing of his notice of appeal could not be "reasonable."  Id. at 201.

This court does not view Evans as clearly established federal law for purposes of Mr. Landman's case because the issue in Evans was whether a state habeas was "pending" for purposes of 28 U.S.C. § 2244(d)(2).

40

Mr. Landman, on the other hand, requests review of the state court's denial of his request for relief from of an out-of-time direct appeal which would affect the finality of his conviction under 28 U.S.C. § 2244(d)(1)(A).

Evans gives this court guidance, however, on the parameters of the term "reasonable" as it is applied to delay and the AEDPA statute of limitations. Evans found a six-month delay is unreasonable as a matter of law where the delay was unexplained and unjustified. The South Dakota circuit court denied Mr. Landman's request for review of his right to appeal because it determined Mr. Landman's *eighteen-year* delay in requesting relief was not reasonable. See Docket 1-12, p. 2. In that determination, this court can discern no error of constitutional dimension, which is a prerequisite for any claim pursued in a § 2254 petition. Gobert, 381 Fed. Appx. at 756. For this reason as well, this court respectfully recommends to the district court that Mr. Landman's § 2254 petition be dismissed.

## CONCLUSION

Based on the foregoing law, facts, and analysis, this court respectfully recommends that respondents' motion to dismiss [Docket No. 5] be granted, that petitioner Burton Landman's motion for summary judgment [Docket No. 11] be denied, and his habeas petition be dismissed ***with prejudice***.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1),

unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 14th day of July, 2016.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

42